UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| EILEEN HABACON, an individual,<br><br>Plaintiff,<br>v.<br><br>EMERALD GRANDE, LLC, a Florida Corporation and WYNDHAM VACATION RESORTS, INC., a Delaware Corporation,<br><br>Defendants. | Case No. 2:19-cv-00165-MMD-PAL<br><br>ORDER |

**I. SUMMARY**

The parties in this case dispute whether Defendants Emerald Grande, LLC ("Emerald") and Wyndham Vacation Resorts, Inc. ("Wyndham") (collectively, "Defendants") pressured and deceived Plaintiff Eileen Habacon into purchasing a timeshare interest. Before the Court is Plaintiff's motion to remand ("Motion"). (ECF No. 10.) The Court has reviewed Defendants' response (ECF No. 14). No reply was filed. For the following reasons, the Court grants Plaintiff's Motion and remands this case to the Eighth Judicial District Court.

**II. BACKGROUND**

The following allegations come from the Complaint unless otherwise indicated. (ECF No. 3-1.)

Plaintiff alleges that Defendants pressured and deceived her into purchasing a timeshare interest. (*Id.* at 6.) According to the Complaint, Plaintiff agreed to attend a two-hour timeshare presentation that ended up lasting five hours and culminated in the execution of a contract ("Contract") for the purchase of a timeshare interest in September 2015. (*Id.* at 7-8.) The parties agreed that the purchase price of the timeshare was $17,679. (*Id.* at 9; ECF No. 14 at 3.) Plaintiff paid for the timeshare with a down payment

in the amount of $2,677.35, and a loan in the amount of $15,001.65, financed through Emerald. (ECF No. 3-1 at 9-10; ECF No. 14 at 3.) Plaintiff has paid an additional $9,314.76 in principal and interest payments as well as $1,970.61 in maintenance and other fees. (ECF No. 14 at 4.) At the time the Complaint was filed, Plaintiff had paid a total of $13,962.72 for her timeshare. (*Id.* at 4.) The parties seem to agree that the Contract obligates Plaintiff to pay the remaining principal and interest ($19,346.04) as well as future maintenance fees for the timeshare ($4,442.04). (*Id.* at 5; *see* ECF No. 10 at 5 (discussing the remaining principal and interest and failing to dispute that future maintenance fees are contractually obligated as well).)

Plaintiff filed her Complaint in the Eighth Judicial District Court (ECF No. 3-1 at 4), and Defendants removed based on diversity jurisdiction (ECF No. 3 at 2).

Plaintiff asserts the following claims in the Complaint: (1) violation of various provisions of the Nevada Deceptive Trade Practices Act, NRS Ch. 598; (2) violation of NRS Ch. 119A.710 related to time shares; (3) fraud in the inducement; (4) negligent misrepresentation; (5) breach of implied covenant of good faith and fair dealing; and (6) violation of the Florida Vacation Plan and Timesharing Act, Fla. Stat. § 721.02 *et seq.* (ECF No. 3-1 at 10-17.) Plaintiff seeks rescission of the Contract as well as actual damages, punitive damages, civil penalties, treble damages, and attorneys' fees. (*Id.* at 12-13, 18.)

## III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit at commencement of the action. 28 U.S.C. § 1441(a). However, courts strictly construe the removal statute against removal jurisdiction, and "[f]ederal jurisdiction *must* be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (emphasis added). The

party seeking removal bears the burden of establishing federal jurisdiction. *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006).

To establish subject matter jurisdiction pursuant to diversity of citizenship under § 1332(a), the party asserting jurisdiction must show: (1) complete diversity of citizenship among opposing parties and (2) an amount in controversy exceeding $75,000. 28 U.S.C. § 1332(a). Where it is not facially evident from the complaint that $75,000 was in controversy at the time of removal, a defendant seeking removal must prove, by a preponderance of the evidence, that the amount in controversy requirement is met. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004).

Under a preponderance of the evidence standard, a removing defendant must "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds" the jurisdictional minimum. *Id.* at 1117 (citations omitted). As to the kind of evidence that may be considered, the Ninth Circuit has adopted the "practice of considering facts presented in the removal petition as well as any 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Conclusory allegations are insufficient. *Matheson*, 319 F.3d at 1090 (citation omitted).

**IV.     DISCUSSION**

Plaintiff does not request a specific amount of damages in the Complaint. (*See generally* ECF No. 3-1.) Thus, Defendants must prove, by a preponderance of the evidence, that the amount in controversy requirement is satisfied. *Valdez*, 372 F.3d at 1117. Defendants have not made this showing. Defendants argue that the amount in controversy exceeds $75,000 based on (1) the amount Plaintiff has already paid for her timeshare ($13,962.72); (2) the remaining principal and interest on Plaintiff's loan ($19,346.04); (3) future maintenance fees for the timeshare ($4,442.04); (4) punitive damages; (5) attorneys' fees between $35,000 and $70,000; and (6) treble damages and civil penalties. (ECF No. 14 at 3-8.) The Court finds that the amount in controversy consists

of the first three amounts plus Defendants' low-end estimate of attorneys' fees for a total of $72,750.80. Defendants have not shown by a preponderance of the evidence that the amount in controversy in this particular case includes punitive damages, treble damages, or civil penalties.

### A. Actual Damages

It seems to be undisputed that the amount in controversy includes the amount Plaintiff has already paid for her timeshare—$13,962.72—because that amount constitutes Plaintiff's actual damages. (*See* ECF No. 14 at 4 ("The amount Plaintiff paid for her timeshare ($13,962.72) is indisputably 'at stake' in this litigation as Plaintiff now seeks to recover this amount through her Complaint."); ECF No. 3-1 at 14 (seeking rescission of the Contract "as restitution for all sums of money or other consideration paid to Defendants" and seeking recovery of "any and all monetary damages"); *see generally* ECF No. 10 (no dispute that the amount in controversy includes Plaintiff's actual damages).) Accordingly, the Court considers Plaintiff's actual damages in the amount of $13,962.72 as part of the amount in controversy.

### B. Future Payment Obligations

It also seems to be undisputed that Plaintiff would pay the remaining principal and interest on her loan ($19,346.04) and maintenance fees for the timeshare ($4,442.04) if the Contract were performed in its entirety. (ECF No. 14 at 5; *see also* ECF No. 10 at 5.) Defendants argue that the amount in controversy includes these amounts because Plaintiff seeks rescission of the Contract. (ECF No. 14 at 5.) Plaintiff argues that the amount in controversy does not include these amounts because Plaintiff seeks monetary damages rather than declaratory or injunctive relief. (ECF No. 10 at 5.) The Court agrees with Defendants.

Plaintiff correctly notes that Defendants rely on statements of law that expressly apply to actions seeking declaratory or injunctive relief. In the cases Defendants cited in their joint statement regarding removal (ECF No. 9 at 3-4), the Supreme Court and the Ninth Circuit found that the amount in controversy is measured by "the value of the object

4

of the litigation" in actions seeking declaratory or injunctive relief. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); *Jackson v. Am. Bar Ass'n*, 538 F.2d 829, 831 (9th Cir. 1976) ("Where the complaint seeks injunctive or declaratory relief and not monetary damages, the amount in controversy is not what might have been recovered in money, but rather the value of the right to be protected or the extent of the injury to be prevented.").

But it seems that the amount in controversy also may be measured by "the value of the objection of the litigation" in actions involving rescission of a contract. Moreover, the value of the contract in such cases seems to encompass future payment obligations that would be avoided by rescission. In *Mitchell v. Artists Rights Enforcement Corporation*, a family trust sued a corporation for breach of contract stemming from the corporation's alleged violation of a royalties agreement between the two parties. 653 F. App'x 522, 523 (9th Cir. 2016). The district court found that it had diversity jurisdiction, that the corporation materially breached the contract, and that rescission of the contract was justified. *Id.* The corporation appealed, and the Ninth Circuit affirmed. *Id.* The Ninth Circuit found that "the 'object of the litigation' was the parties' contract, which the [t]rust sought to rescind, and the contract's 'value' was the share of future royalty payments that [the corporation] stood to collect through that agreement." *Id.*

Plus, rescission of a contract—like injunctive relief—is an equitable remedy. *See, e.g.*, *Ogden Martin Sys., Inc. v. San Bernardino County*, 932 F.2d 1284, 1285 (9th Cir. 1991) (characterizing the remedy of rescission as equitable). Thus, just as in cases involving injunctive relief, "the value of the object of the litigation" may be an appropriate measure of the amount in controversy in cases involving rescission of a contract. *See also Pagel v. Dairy Farmers of Am., Inc.*, 986 F. Supp. 2d 1151, 1158 (C.D. Cal. 2013) (noting that the "either viewpoint rule"—which measures the amount in controversy by the value of the object of the litigation—"is usually applied in cases where the plaintiff pursues an equitable remedy").

5

This conclusion also finds support in the numerous district court cases Defendants cite, of which *Renard's Cheese Store, LLC v. Ricoh USA, Inc.* is particularly persuasive. No. 14-CV-559, 2014 WL 3969760 (E.D. Wis. Aug. 13, 2014). There, the court found that "[w]hen a party seeks to rescind a contract, the value of the contract determines the amount in controversy for the purpose of determining jurisdiction." *Id.* at *2. The court reasoned that the party seeking rescission "would receive not only restitution for past lease payments, it would also be relieved of its obligation to make the remaining lease payments contracted for." *Id.*

Accordingly, the Court considers Plaintiff's future payment obligations as part of the amount in controversy.

### C. Punitive Damages

Defendants argue that plaintiffs who have sued under the Nevada Deceptive Trade Practices Act have received "sizeable punitive damage awards." (ECF No. 14 at 5-6.) But Defendants make no effort to analogize this case to the cases they cite in which punitive damages were awarded. (*See id.* at 6.) "[T]he mere possibility of an award of attorney's fees or punitive damages is not sufficient to prove that the amount in controversy has been met." *Polanski v. US Bank N.A.*, No. 3:11-cv-0356-LRH-VPC, 2011 WL 2600496, at *1 (D. Nev. June 29, 2011). Accordingly, the Court finds that Defendants have failed to show by a preponderance of the evidence that punitive damages are part of the amount in controversy in this case.

### D. Treble Damages and Civil Penalties

Defendants argue that the amount in controversy includes treble damages and civil penalties Plaintiff seeks in the Complaint. (ECF No. 14 at 8; *see also* ECF No. 3-1 at 12 ("Plaintiff seeks to recover from Defendants all actual damages, punitive damages, civil penalties, treble damages, and attorney's fees allowed by law . . . .").) But Defendants are equivocal about whether these damages would be awarded if Plaintiff succeeded. (*See* ECF No. 14 at 8 ("[T]hese additional categories of damages/penalties could, in theory, be issued . . . .").) Moreover, Defendants have not identified particular allegations in the

Complaint that would establish liability for treble damages and civil penalties. (*See id.*) Accordingly, the Court finds that Defendants have failed to show by a preponderance of the evidence that treble damages and civil penalties are part of the amount in controversy in this case.

### E. Attorneys' Fees

Defendants argue that attorneys' fees ranging from $35,000 to $75,000 are part of the amount in controversy based on an estimate of 100 to 200 hours of attorney time at $350/hour. (ECF No. 14 at 6-7.) At least one of the statutes under which Plaintiff sues—the Nevada Deceptive Trade Practices Act—contains a fee-shifting provision. *See* NRS § 598.0999(2) ("The court in any such action may, in addition to any other relief or reimbursement, award reasonable attorney's fees and costs."); *see also Zandian v. Margolin*, Nos. 65205, 65960, 2015 WL 6173912, at *1 (Nev. Oct. 19, 2015). In addition, the Ninth Circuit has held that "if a plaintiff would be entitled under a contract or statute to future attorneys' fees, such fees are at stake in the litigation and should be included in the amount in controversy." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 788 (9th Cir. 2018).

But Defendants failed to produce summary-judgment-type evidence to show that Plaintiff's counsel has thirteen years of experience. The exhibit that Defendants produced seems to be a print-out from Plaintiff's counsel's website. (*See* ECF No. 14-1 at 2.) Defendants did not file an affidavit authenticating this exhibit. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (quoting *Alexander Dawson, Inc. v. NLRB*, 586 F.2d 1300, 1302 (9th Cir.1978) (per curiam)) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment[, and] [a]uthentication is a 'condition precedent to admissibility' . . . .").

Moreover, Defendants cite only one case in support of their assertion that 100 to 200 hours of attorney time is reasonable. (ECF No. 14 at 7 (citing *Lakeside Inn, Inc. v. Bank of the West*, 3:14-cv-00473-RCJ-WGC, 2015 WL 3454492 (D. Nev. June 1, 2015)).) In *Lakeside Inn*, the parties entered into a series of complex financial contracts involving

millions of dollars. 2015 WL 3454492, at *1. The court found that 532.2 attorney and paralegal hours were reasonable "in this moderately complex contractual case." *Id.* at *4. The Contract here involves about $30,000 and is not complex. Thus, the Court finds that Defendants' low-end estimate of 100 hours of work yields the appropriate value for considering the amount in controversy in this case.

The amount in controversy in this case is $72,750.80—the value of the Contract plus Defendants' low-end estimate of attorneys' fees. Given that this amount does not exceed $75,000, the Court will remand this case.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Plaintiff's motion to remand (ECF No. 10) is granted. This action is remanded to the Eighth Judicial District Court. The Clerk of the Court is instructed to close this case.

DATED THIS 12th day of April 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE